# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE ENRIQUE NUNEZ, III, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 18-4493 |
| | : | |
| C/O HEERE, | : | |
| | : | |
| Defendant. | : | |

McHUGH, J.                                                                                  FEBRUARY 6, 2020

## MEMORANDUM

This is a civil rights action alleging excessive use of force brought by a prisoner proceeding *pro se*. Discovery is closed, and the Defendant correctional officer now moves for summary judgment. The substantive issue presented by the motion is whether Plaintiff has failed to exhaust administrative remedies through the grievance process before suing. The motion presents an important procedural question as well: May a district court ever properly discount sworn testimony in deciding whether there is a material issue of fact? Plaintiff has not filed a response, but mindful of his *pro se* status, the Court has reviewed the motion on the merits, including such precedent as there is concerning the procedural question. Trial courts must exercise extreme caution before discounting a plaintiff's deposition testimony. It can only be justified under exceptional circumstances. Nonetheless, where the plaintiff's own version of events is inconsistent or contradictory, and there is substantial and compelling contrary evidence in the record, to such an extent that no reasonable jury could credit the plaintiff's account, summary judgment may be proper. It will be granted here.

I.  **Relevant Factual Background**

Plaintiff Jose Enrique Nunez, III, filed this 42 U.S.C. § 1983 action against Defendant Special Operations Group Operator Daniel Heere (identified in the pleadings as Correctional Officer Heere) for an incident purportedly involving physical abuse that took place at the Berks County Jail on August 27, 2018.  Specifically, Plaintiff alleges that Defendant assaulted him in the process of escorting him from one part of the jail to another, leading to his suffering a chipped tooth and other injuries to his face, wrist, hand, ribs, and knees.  Defendant strongly contests Plaintiff's account of the facts,[1] and further contends that Plaintiff failed to appropriately exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e.

This Court's standard form for *pro se* litigants addresses the question of exhaustion.  Plaintiff pleaded that he filed a grievance concerning this incident, ECF 1 at 4, and attached as exhibits two grievance forms, neither of which address this incident.  Documents produced by Defendant demonstrate that Plaintiff was highly familiar with the Jail's grievance mechanism.  The Jail's grievance log shows Plaintiff filing 36 grievances between August and November 2018, along with 7 appeals.  Def. Ex. C, ECF 49-1.  Over the course of the litigation Plaintiff submitted multiple documents relating to other grievances and disciplinary proceedings, but none of those documents contain a grievance or appeal filed regarding the incident with Defendant.  ECF 22, 25, 26, 29, 30, 31, 35.  Consequently, the only evidence of this grievance having been filed is his testimony at deposition.

---

[1] The record includes a misconduct citation against Plaintiff regarding the August 27, 2018, incident, ECF 22, which describes the event very differently than as described in the Complaint.  As discussed more fully below, this is the only documentation provided by Plaintiff that makes any reference to the incident at all; the remaining documents are grievances involving unrelated matters.

In his testimony, Plaintiff was both vague and inconsistent in describing how the grievance was filed. He could not recall what he said in the grievance. Pl. Dep. at 75:21-76:4, ECF 49-2. At one point, he appeared to equate his conversation with Captain Castro, an officer at the jail, with having provided notice of his grievance. *Id*. at 77:22-78:2. At another point, he testified that he filed the grievance by leaving it outside of his cell to be picked up by a counselor. *Id.* at 87:11-19. Plaintiff further alleges that he filed an administrative grievance in accordance with internal jail procedures and then filed an appeal, *Id*. at 75:15-78:16; 87:20-88:4, but does not recall the substance of the response he received. *Id*. at 88:1-12. If Plaintiff had in fact filed an appeal of the grievance, that would have given rise to another written record under the Jail's procedures for appealing a grievance.[2]

As to his failure to provide a copy of his grievance, Plaintiff testified that he triggered the sprinkler in his cell which damaged his documents, including the copy of the grievance he had. *Id*. at 82:12-21. After the first time Plaintiff's papers were damaged, he was given another copy of his inmate file, which would have included the grievance at issue, but Plaintiff maintains that those papers were later damaged as well. *Id*. at 82:22-83:10.

Defendant has provided a redacted copy of the Berks County Jail grievance log, Def. Ex. C, ECF 49-1, from August 1, 2018, through November 30, 2018, highlighting Plaintiff's grievances and appeals during that period. Although the log shows that Plaintiff filed several grievances during the period in question, none of Plaintiff's grievances listed refer to Defendant or the incident. Furthermore, Defendant has provided all grievances contained in Plaintiff's

---

[2] Berks County Jail System Inmate Handbook at 52, *available at* http://www.co.berks.pa.us/Dept/Jail/Documents/ INMATE%20HANDBOOK%202016%20-%20PDF%20version%2004-01-16.pdf ("10.3.8 Appeal Process: You may only appeal the grievance response by submitting a written appeal to the Warden within fifteen (15) days of issuance of the grievance decision") (last accessed Feb. 5, 2020).

3

inmate complaint file during this period, and none of them were filed with regards to the August 27, 2018, incident with Defendant. Def. Ex. E, ECF 49-1.

## II. Standard of Review

This Motion is governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as amplified by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party has the burden of demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the nonmoving party must present evidence of a genuine issue in rebuttal. *Williams v. Borough of West Chester, Pennsylvania*, 891 F.2d 458, 464 (3d Cir. 1989). Determining whether the nonmoving party has adduced the required quantum of evidence to survive summary judgment "must be done on a case-by-case basis." *Id.* Although Plaintiff has not responded, because a motion for summary judgement cannot be granted as unopposed,[3] I have undertaken a full analysis of the merits.

## III. Discussion

### A. Testimony as the sole basis for opposing summary judgment

The law is clear that when resolving a motion for summary judgment, the court must not invade the province of the jury, which includes "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). This caution has particular force when it comes to sworn testimony, which is not to be taken lightly. In many cases, testimony forms the bulk of the evidence. A witness' oath to testify truthfully, which attaches the penalty of perjury, must be accorded

---

[3] "[A] district court cannot provide by local rule that a motion for summary judgment will be automatically granted when the opposing party fails to respond, because such a rule would violate Fed.R.Civ.P. 56. Even though Rule 56(e) requires a non-moving party to set forth specific facts showing that there is a genuine issue for trial, it is well-settled . . . that this does not mean that a moving party is automatically entitled to summary judgment if the opposing party does not respond." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (cleaned up).

substantial weight. The administration of justice in civil and criminal cases alike depends on sworn testimony. In the context of employment discrimination actions, the Third Circuit has specifically held that a plaintiff can survive a motion for summary judgment based on his testimony "standing alone." *Jackson v. University of Pittsburgh*, 826 F.2d 230, 236 (3d Cir. 1987); *Weldon v. Kraft*, 896 F.2d 793, 800 (3d Cir. 1990). It has not addressed whether, and under what circumstances, a district court may ever properly discount sworn testimony when it is the sole evidentiary basis for a plaintiff to survive summary judgment.

Two circuits—the Second and the Seventh—have recognized a narrow exception to the general rule that sworn testimony is sufficient to establish a genuine issue of material fact. If a plaintiff solely relies on his own testimony, uncorroborated by any other direct evidence, which is "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the plaintiff's allegations," it is appropriate to effectively decide that the testimony is insufficient to survive summary judgment. *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005) (citations omitted); *see also Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir. 1997) (Posner, J.) (noting that "testimony can and should be rejected without a trial if, in the circumstances, no reasonable person would believe it"); *Mumtaz v. Etihad Airways & Airlines*, 2014 WL 7405216, at *6 (D.N.J. Dec. 30, 2014) (applying holding in *Jeffreys* to grant defendant's motion for summary judgment).

A combination of factors leads me to conclude that this is the exceptional case where Plaintiff's testimony alone will not suffice. In the first instance, his testimony as to the filing of the grievance is vague—and by one version, leaving it outside his cell door—such that there is reason to question whether it was in fact received by jail officials. Similarly, Plaintiff's testimony as to the resolution of the grievance is equally vague, and though he claims an appeal

5

was filed, which would have generated a new paper trail of corroborating evidence, Plaintiff does not provide records of that either. Plaintiff's version of events depends on not just one but two destructive events in his cell, but by his own account after the first he received another copy of the relevant grievance from his inmate file. Why then not after the second event? Plaintiff was obviously well versed in the grievance procedure and has been able to supply copies of multiple other grievances, but not the pertinent one. And Defendant has produced a grievance log and documentation from the Plaintiff's complaint file, both of which appear to show that Plaintiff did not in fact file a grievance with respect to the incident.

The grievance log shows Plaintiff filing 36 grievances between August and November 2018, along with 7 appeals. Def. Ex. C. None of the summaries of Plaintiff's grievances refers to Defendant or the assault. The log was redacted, and to guard against the possibility that an interested party at the Jail might have obscured a relevant entry, the Court inquired of counsel as to how the redaction was performed. An affidavit has established that the redaction was performed by counsel, who has an ethical obligation of candor as an officer of the Court. ECF 50.

The redacted log was docketed in a format that makes it electronically searchable, and an appropriate search of the log to identify every grievance against Officer Heere returned two log entry summaries that make mention of him. Counsel through his affidavit has certified that both involved complaints from other inmates. Furthermore, neither of those grievance descriptions include assault or excessive force. Similarly, review of Plaintiff's inmate file does not reveal any grievance filed by him regarding the August 27, 2018, incident with Defendant.

Given this record, I conclude that this is one of the rare cases where no factfinder could reasonably credit Plaintiff's testimony that he submitted a grievance to jail officials.[4]

## B. Plaintiff has not pursued administrative exhaustion as required by the PLRA

In order to pursue § 1983 claims in federal court, incarcerated plaintiffs must comply with the exhaustion requirements specified in the PLRA:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Plaintiffs must first avail themselves of the administrative grievance procedures extant within the correctional system they find themselves placed. The PLRA contemplates that a plaintiff may bring his federal claim into court only after he has pursued his grievance to the final stages of internal appellate review. *Spruill v. Gillis,* 372 F.3d 218, 227 (3d Cir. 2004) (noting that incarcerated plaintiffs "must nonetheless pursue the grievance process to its end before coming to federal court").

Plaintiff has failed to bring forth reliable evidence to demonstrate he met the requirement of exhaustion.

---

[4] The caution that district judges must exercise is borne out by the subsequent history of the Second Circuit's holding in *Jeffreys*. There are nearly fifty later district court decisions within that circuit in which judges have found distinctions in the record that would render dismissal improper.

**IV.     Conclusion**

For the reasons set forth above, Defendant's Motion for Summary Judgment will be granted.  An appropriate Order follows.

    /s/ Gerald Austin McHugh
Gerald Austin McHugh
United States District Judge